**ALBANY INTERNATIONAL CORPORATION**

v.

**Raymond L. HALPERIN.**

Supreme Judicial Court of Maine.

July 12, 1978.

Doyle & Fuller by Craig H. Nelson (orally), Jon R. Doyle, Augusta, for plaintiff.

Jerome S. Matus, Asst. Atty. Gen., (orally), Augusta, for defendant.

Before DUFRESNE, C. J., and WERNICK, ARCHIBALD, DELAHANTY, and GODFREY, JJ.

GODFREY, Justice.

This case is before the Law Court on report by agreement of the parties pursuant to Rule 72(b) of the Maine Rules of Civil Procedure. Appellant Albany International Corporation brought a complaint in Superior Court pursuant to 36 M.R.S.A. § 5300 and Rule 80B, M.R.Civ.P., for review of a determination of the State Tax Assessor. The complaint challenged the Assessor's determination of a deficiency in the appellant's Maine income tax returns for the years 1969, 1970, and 1971. The version of the Maine Income Tax Law applicable to the controversy is section F of chapter 154 of the 1969 Private and Special Laws of Maine.[1]

Appellant, a corporation domiciled in New York, manufactures three kinds of products: paper machine clothing, plastics, and industrial fabrics. Albany International has six divisions, of which only one, Globe Albany, operates in Maine as well as elsewhere. The Globe Albany Division is engaged solely in the manufacture and distribution of industrial fabrics. Though each division has its own president, board of directors, and accounting department, Albany International Corporation works with its divisions in establishing objectives and goals, provides accounting controls, determines capital budgets for the divisions, and does the financing for divisions in the United States. On the basis of those facts, the State Tax Assessor determined that in view of the degree of control over the various divisions that is vested in appellant and the relationship of the various divisions within the corporate structure, separate accounting by the Globe Albany Division under subsection (17) of 36 M.R.S.A. § 5211 was not required to represent fairly the extent of the taxpayer's business activity in Maine. That determination is not challenged on this appeal.

I

The Assessor reclassified certain items of income reported by appellant in the tax years 1969 through 1971 from "nonbusiness income" to "business income." The items involved income from capital gains, royalties, and interest derived by Albany International from the business of divisions other than the Globe Albany Division. The Assessor determined that those items of income arose from "transactions and activity in the regular course of the taxpayer's trade or business" within the definition of "business income" in subsection (A) of 36 M.R.S.A. § 5210.[2] He concluded therefore,

1. For the current version of the law, see 36 M.R.S.A. pt. 8 (Supps. 1973 & 1977). For convenience, citations in the opinion will be made to provisions of "36 M.R.S.A.," though the 1969 version is intended.

2. *Subsections (A) and (D) of 36 M.R.S.A. § 5210 provide*

"As used in this section, unless the context otherwise requires:
A. 'Business income' means income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management and disposition of the property constitutes

that they were properly treated as "business income" and apportionable to the State of Maine on the basis of the statutory formula set forth in 36 M.R.S.A. § 5211(8).[3]

Appellant asserts that since the income in question arose solely from the activity of divisions which do not operate in Maine, it should not be treated as "business income" for Maine income tax purposes. With exceptions not pertinent here, the Maine income tax scheme establishes a formula which renders irrelevant the actual source of specific items of "business income" in the case of a taxpayer having income from business activity that is taxable both within and outside Maine.[4] In such a case the taxpayer's "business income" must be ascertained and then apportioned to Maine on the basis of the formulas prescribed in subsections 8 to 16 of 36 M.R.S.A. § 5211. Once the proper taxable entity is determined, all its "business income" must be included in order to determine the amount of income attributable to Maine. Otherwise the taxpayer's total income to be apportioned would be understated.

Appellant contends that its income from capital gains, royalties, and interest, derived from out-of-state transactions of other divisions of the corporation, or from out-of-state property of the corporation, should be treated as "nonbusiness income"[5] in the application of section 5211 of title 36. On that theory, the income in question would be "allocated" as a result of applying subsections 3 through 7 of section 5211, rather than "apportioned" partly to Maine under subsections 8 through 16 as described above. The rules in section 5211 for "allocation" of "nonbusiness income" are such that the income here in dispute, if classified as "nonbusiness income," received by divisions other than Globe Albany, would be "allocable,"

but not to Maine, and hence would not be includable in appellant's Maine taxable income.

The definition of "business income" in 36 M.R.S.A. § 5210(A) includes all income from transactions and activity in the regular course of the taxpayer's business. It includes income from property if the acquisition, management, and disposition of the property "constitutes integral parts" of the taxpayer's regular business operations. Appellant has not questioned the Assessor's classification of the income in question, from activity of other divisions of Albany International, as income in fact received in the regular course of business of those divisions or as derived in fact from property acquired, managed and disposed of as part of the appellant's regular business activity outside Maine.

Subsection 8 provides for the apportionment of "all business income." The "allocation" that subsections 3 through 7 provide for income from capital gains, royalties, and interest is to be applied only to "nonbusiness income." If some element of income is "business income" as defined in section 5210(A), it is not subject to the allocation formulas of subsections 3 to 7 of section 5211.

Appellant argues that the definition of "business income" should be construed to exclude income from transactions or activity in the regular course of the taxpayer's trade or business to the extent that it is derived from out-of-state activity having no connection with the business transacted in Maine. Appellant says that the income here in question, even if it was income arising from activity in the regular course of the taxpayer's business or from property acquired, managed or disposed of as part of the corporation's regular business opera-

integral parts of the taxpayer's regular trade or business operations.

   .     .     .     .     .

D. 'Nonbusiness income' means all income other than business income."

**3.** Subsection (8) of 36 M.R.S.A. § 5211 provides "All business income shall be apportioned to this State by multiplying the income by a fraction, the numerator of which is the prop-

erty factor plus the payroll factor plus the sales factor, and the denominator of which is 3." See also subsections (9) to (16).

**4.** Since 1969, 36 M.R.S.A. § 5200 has imposed a tax on every "taxable corporation," as defined in 36 M.R.S.A. § 5102(10).

**5.** 36 M.R.S.A. § 5210(D). See note 2 above.

tions, was derived from operations of the taxpayer's divisions having no relationship with the business of Globe Albany in Maine. In effect, the taxpayer asks us to import into the definition of "business income" a requirement that the transactions from which it is derived have some connection with the taxpayer's regular business operations in Maine.

■■■■ Thus to limit the meaning of "business income" in this part of the tax law would disregard the fact that the statute sets up a carefully articulated system designed to yield normally a fair measurement of the Maine taxable income of a multistate or multinational business. By including sections 5210 and 5211 as part of the Maine income tax law, the Maine Legislature adopted, substantially intact, the Uniform Division of Income for Tax Purposes Act,[6] which has been enacted, sometimes with modification, by twenty-seven states. The Act provides a method for attributing to a state, for the purpose of income taxation, a portion of the total business income of a multistate or multinational business that is carrying on some of its regular activity within the state. The formulas in subsections (8) to (16) of section 5211 for apportionment of "business income" provide a reasonable method of measuring, and attributing to the State of Maine, a portion of all the income arising from transactions in the regular course of the taxpayer's business. Included in that "business income" by express provision is income from tangible and intangible property if the acquisition, management, and disposition of the property "constitutes integral parts" of the taxpayer's regular trade or business operations. Rents or royalties from real or tangible personal property, capital gains, interest, dividends or patent or copyright royalties are to be allocated, rather than apportioned, only to the

extent that they do not come within the statutory definition of "business income."

The arrangements for state income taxation of multistate or multinational businesses, established by sections 5210 and 5211 of the Maine tax law and by comparable provisions of the uniform act in twenty-six other states, would have to be dismantled, as a practical matter, if the appellant's view were to prevail. To import into the definition of "business income" a limitation of the kind appellant urges would make the applicability of section 5210(A) depend upon a showing of some connection between the local business and the production of particular income by one or more out-of-state elements of the business. It could not have been the purpose of this legislation to create a system for rationalizing state income taxation of multistate or multinational business concerns, only to render it practically ineffective by requiring a showing that various items of out-of-state income, received in the regular course of business, were connected in some demonstrable way with activities of the taxpayer in Maine.

If the apportionment and allocation provisions of subsections (3) to (16) of section 5211 do not fairly represent the extent of the taxpayer's activities in Maine, the statute authorizes certain kinds of relief. 36 M.R.S.A. § 5211, subsec. (17). No issue arising out of the denial of an application for such relief is presented on this appeal.

## II

■■■■ Appellant also claims that the Assessor's refusal to allow a tax credit or deduction for taxes paid to foreign governments was erroneous. The Maine tax law provides for computation of the state corporate income tax on the basis of taxable income as computed under the federal income tax law.[7] On its federal income tax returns for

---

6. 7 U.L.A. 365 (Master ed. 1970).

7. During the tax years 1969, 1970, and 1971, section 5200 of title 36 provided

"A tax is hereby imposed upon the entire taxable income of every 'Taxable Corporation' as follows:

4% of the Maine net income of the corporation."

During the same period, subsection (8) of section 5102 of title 36 provided, in part,

"8. Maine net Income. 'Maine net income' means, for any taxable year and for any corporate taxpayer, the taxable income

1969, 1970, and 1971, appellant elected to take a tax credit pursuant to sections 901 and 960 of the Internal Revenue Code for taxes paid to foreign governments. By electing the tax credit in its federal return, appellant in effect gave up in its federal return a deduction for such taxes that would have been available under sections 164(a) and 275(a) of the Internal Revenue Code though the income from the foreign business remained included in the amount of appellant's federal taxable income. Since "Maine net income" is computed on the basis of federal taxable income and appellant had elected, in effect, not to deduct the amount paid for foreign taxes in its federal return, no deduction for the amount of foreign taxes was enjoyed by appellant for Maine tax purposes.

We see no basis in the Maine tax law for appellant's claim to any deduction or credit for amounts paid by appellant in foreign taxes. Except for excluding the amount of any "foreign dividend gross-up" from Maine taxable income, the Maine income tax law accords corporate taxpayers no deduction or credit for foreign taxes paid. The Assessor deducted the amount of the "foreign dividend gross-up" from appellant's federal taxable income, as he was required to by 36 M.R.S.A. § 5102(8)(C)[8] and used the difference as the basis for computing the appellant's Maine taxable income. The fact that appellant had not, in effect, deducted amounts paid for foreign taxes from its gross income was the result of its own election under the Internal Revenue Code to take a tax credit rather than a deduction. It was bound by that election under the federal tax law, and we find nothing in the Maine law that can be construed to relieve the corporation of the consequences of its choice for purposes of the state income tax.

Appellant seems to advance also an argument that because the Globe Albany Division does not operate in any foreign countries and because the "foreign dividend gross-up" is normally treated as a dividend to the corporate taxpayer for federal tax purposes, the amount of appellant's "foreign dividend gross-up" should be treated as nonbusiness income and therefore "allocated" under subsections 3 and 6 of 36 M.R.S.A. § 5211. Whatever might be the merits of this argument if the "foreign dividend gross-up" were included in the appellant's Maine taxable income, in fact the Assessor totally excluded the gross-up from appellant's federal taxable income before applying the apportionment formulas to determine Maine taxable income. Since the amount of the gross-up was excluded from the taxable income apportioned, any argument that it should have been "allocated" is irrelevant to the actual facts of the case.

We conclude that the State Tax Assessor acted according to law in making the deficiency assessment.

The entry is:

Remanded to the Superior Court for entry of judgment for the defendant.

POMEROY, J., did not sit.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.

of the taxpayer for that taxable year under the laws of the United States, allocated or apportioned to this State under chapter 821 [§§ 5210, 5211] excluding:
A. Income which under laws of the United States is exempt from taxation by states;
B. A deduction for tax imposed by this part or the equivalent taxing statute of another state;

C. The amount added to income under Internal Revenue Code, Section 78. (Foreign dividend gross-up).
.   .   .   ."

**8.** Set forth above in note 7.